# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ARTHUR LITTLEFIELD, JR., | ) | 1:06cv1530 OWW DLB |
| | ) | |
| Plaintiff, | ) ) ) | FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS |
| v. | ) | |
| OFFICER VIVEROS, OFFICER MIRAMONTES, et al., | ) ) ) | (Document 26) |
| | ) | |
| Defendants. | ) ) | |

Plaintiff Arthur Littlefield, Jr., ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action. Defendants Officer Viveros and Officer Miramontes ("Defendants") filed the instant motion to dismiss on September 28, 2007. Plaintiff did not file an opposition. Pursuant to Local Rule 78-230(m), the matter is deemed appropriate for findings and recommendation to the District Court without oral argument.

**PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff filed this civil rights action on October 26, 2006. Pursuant to Court order, he filed his First Amended Complaint ("FAC") on May 25, 2007.

On June 12, 2007, the Court issued Findings and Recommendation that Defendants Jane Doe #1 and the Probation Department be dismissed. The Findings and Recommendation was adopted on November 29, 2007, and therefore Jane Doe #1 and the Probation Department, along with all allegations against them, have been dismissed.

1

Defendants Officer Viveros and Officer Miramontes are the remaining defendants. According to the FAC, Defendants made contact with Plaintiff on March 12, 2003, during a traffic stop. Plaintiff had exited his vehicle and was heading towards the door of the residence when Officer Viveros "called [him] back and told [him] he was going to cite [him] for failing to stop at a stop sign." FAC, at 4. Officer Viveros asked Plaintiff for his driver's license and asked whether he was on probation or parole. Plaintiff responded, "I shouldn't be." FAC, at 4. Officer Viveros then asked Plaintiff where his driver's license was and Plaintiff told him it was in the glove compartment. Officer Viveros retrieved Plaintiff's license and called dispatch. Dispatch told Officer Viveros that Plaintiff was on active felony probation and that he was open to search and seizure. Officer Viveros asked Plaintiff why he had lied and Plaintiff responded that he "didn't know what was going on and [he] wasn't supposed to be on probation." FAC, at 4.

Officer Viveros then informed Plaintiff that he was going to search his vehicle. He found items of contraband for which Plaintiff was eventually charged and convicted. On October 27, 2005, the results of an investigation revealed that Plaintiff was not on probation at the time of the search.

Based on these facts, Plaintiff alleges that Defendants violated his Fourth Amendment right to be free from unconstitutional search and seizures.[1] Plaintiff requests punitive damages in the amount of $100,000 for the allegedly unconstitutional search.

Defendants filed the instant motion to dismiss on September 28, 2007. Plaintiff did not file an opposition.

**LEGAL STANDARD**

In considering a motion to dismiss for failure to state a claim, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411,

---

[1] Plaintiff specifically states that he is not challenging the conviction resulting from the search, but rather is challenging the constitutionality of the search itself.

2

421, reh'g denied, 396 U.S. 869 (1969). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

**DISCUSSION**

Defendants assert the defense of qualified immunity in response to Plaintiff's allegation of a Fourth Amendment violation.

Qualified immunity is an affirmative defense that must be raised by the defendant. Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir.1993). It protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It follows that, like any affirmative defense, qualified immunity may be upheld on a 12(b)(6) motion only when it is established on the face of the complaint.

In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If not, the inquiry ends. Id.

If, and only if, a violation can be made out, the next step is then to ask whether the right was clearly established. Saucier, 533 F.3d at 201. In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178 (9th Cir. 2003). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Defendants may have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Saucier, 533 U.S. at 202. "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could

3

1  have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931

2  F.2d 624, 627 (9th Cir.1991).

3     Plaintiff alleges that Defendants violated his Fourth Amendment right to be free of

4  unreasonable search and seizures when they conducted the search of his vehicle based on

5  incorrect information.  This Court recently performed an extensive analysis of the application of

6  qualified immunity in situations where officers relied on erroneous information.  In Willis v.

7  Mullins, ___ F.Supp.2d ___ (2007 WL 2814862) (E.D.Cal. 2007), law enforcement officials

8  performed a parole search based on an incorrect report that the plaintiff was on parole.  In ruling

9  on defendants' motion for summary judgment, the Court explained:

> The pertinent facts are largely uncontested.  Plaintiff's name was on the Parole Roster in error.  The Parole Roster is distributed by the California Department of Corrections to the police departments once or twice a month.  Defendants received a call from the operator of a motel concerning excessive phone traffic from a room registered to Plaintiff. [footnote omitted]  Based solely on their belief that Plaintiff was a parolee subject to a search condition, Defendants entered the motel room without Plaintiff's consent.  Plaintiff provided proof that he was discharged from parole after Defendants were inside.  In the criminal prosecution of Plaintiff, the California Supreme Court found, and the California Attorney General's office conceded, that "A Fourth Amendment violation occurred when the officers entered the motel room." People v. Willis, 28 Cal.4th 22, 29, 120 Cal.Rptr.2d 105, 46 P.3d 898 (Cal.2002).  Defendants entered to search the premises without a warrant.  There was insufficient evidence to justify the entry based on exigent circumstances.  As Plaintiff was not subject to a search condition, the entry violated the Fourth Amendment. People v. Downing, 33 Cal.App.4th 1641, 1650-1, 40 Cal.Rptr.2d 176 (Cal.Ct.App.1995) ("Where, however, the search is later found to be invalid, as in this case where it was conducted pursuant to a probation condition or 'consent' that had expired, i.e., was nonexistent, at the time of the search, a Fourth Amendment violation is shown").
>
> This conclusion comports with case law concerning erroneous arrests of individuals based on errors in the warrant.  The District of Nevada faced a situation where a criminal defendant was arrested based on a warrant for parole violations promulgated through a federal database.  The database contained faulty information as the warrant had been recalled five months prior.  While searching the individual incident to the arrest, contraband was found, which lead to a separate charge and conviction.  The court found a constitutional violation and suppressed all evidence gathered incident to the arrest, stating "a computer inaccuracy of this nature and duration, even if unintended, amounted to a capricious disregard for the rights of the defendant as a citizen of the United States. The evidence compels a finding that the government's action was equivalent to an arbitrary arrest, and that an arrest on this basis deprived defendant of his liberty without due process of law." United States v. Mackey, 387 F.Supp. 1121, 1125 (D.Nev.1975).  The Mackey decision has been approvingly cited by the Central District of California which ruled that the plaintiff in a Section 1983 suit had his Fourth Amendment rights violated when he was repeatedly arrested based on mistaken information contained in a federal database. Rogan v. Los Angeles, 668 F.Supp. 1384, 1392 (C.D.Cal.1987).  Overall, courts within the jurisdiction of the Ninth Circuit appear to conclude that "Inaccurate

information cannot serve as a basis for probable cause." Kirk v. Hesselroth, 707 F.Supp. 1149, 1152 (N.D.Cal.1988). [footnote omitted]

Willis, 2007 WL 2814862 at *14-15.

Having found that a constitutional violation occurred under the first prong of Saucier and that the law was clear, the Court moved on with the qualified immunity discussion, stating that "[q]ualified immunity thus boils down to whether it was reasonable for Defendants to rely on the information contained in the Parole Roster in order to determine if an individual is subject to a parole search condition." Id. at *16. The Court noted that it could not find any direct precedent on the issue and then set forth the following case law from other jurisdictions:

> The Third Circuit has said, "we have generally extended immunity to an officer who makes an arrest based on an objectively reasonable belief that there is a valid warrant. Nevertheless, an apparently valid warrant does not render an officer immune from suit if his reliance on it is unreasonable in light of the relevant circumstances. Such circumstances include, but are not limited to, other information that the officer possesses or to which he has reasonable access." Berg v. County of Allegheny, 219 F.3d 261, 273 (3rd Cir. 2000). . .
>
> . . . Overall, when officers "did not have any reason to question the integrity of the information provided by the" database, their reliance on information from that database is reasonable. United States v. Miguel, 368 F.3d 1150, 1154 (9th Cir.2004) (context of reasonable suspicion for traffic stop). When they either received warnings about reliability or should have known that the database was flawed from its very design, officers may not rely on information from that database.

Id. at *17-18.

Based on this case law, the Court found that the evidence before it was not sufficient to demonstrate that defendants were not on notice as to possible errors in the Parole Roster and was therefore insufficient to support their claim of qualified immunity. Id. at *18.

Pursuant to this analysis, then, it is likely that Plaintiff has stated a constitutional violation. However, the allegations of his complaint support a finding that Defendants are entitled to qualified immunity. Plaintiff's allegations do not suggest that Defendants were unreasonable in relying on the information provided by dispatch. Although Plaintiff states that he told Officer Viveros that he "shouldn't be" on parole or probation and later stated that he didn't know what was going on, these statements do not negate the reasonableness of the officers' reliance. Opening Brief, at 4. Indeed, there are circumstances in which an officer's reliance is not reasonable, but those cases appear limited to systemic problems with the database

rather than random, unrelated mistakes.  See eg. United States v. Miguel, 368 F.3d 1150, 1154 (9th Cir. 2004) (officers had reasonable suspicion for a traffic stop where their reliance on a mistaken fact was reasonable and they had no reason to question the integrity of the information in the database); Smith v. City of Oklahoma City, 696 F.2d 784 (10th Cir. 1983) (reliance on an information system which knowingly and structurally provided for a class of erroneous warrants will not shield entity from civil liability); Kirk v. Hesselroth, 707 F.Supp. 1149, 1155 (N.D.Cal. 1989) (sending the issue of qualified immunity to the jury because there was a factual dispute over whether defendant officer received any advice to verify the registration requirement information from an independent source).  As this Court recognized in Willis v. Mullins, "[i]t is one thing to have random errors, which may occur in even the best of systems, but where the information system, by its very design generates false positives of a specific category that can be easily avoided, it may not be reasonably relied upon." 2007 WL 2814862, * 18.

    The Court therefore finds that Defendants were reasonable in relying on the erroneous dispatch report, despite Plaintiff's statements that he was not on parole or probation.  If the Court found otherwise, it would essentially result in a requirement that law enforcement officials, when faced with conflicting information from a suspect, take additional affirmative steps to verify information.  Given the situations in which officers often find themselves, they do not have the luxury of time or resources to confirm the information they receive during traffic stops.

    Accordingly, the Court recommends that the motion to dismiss be GRANTED because Defendants are entitled to qualified immunity.[2]

## RECOMMENDATION

    Based on the above, the Court RECOMMENDS that Defendants' motion to dismiss be GRANTED.

    These Findings and Recommendations are submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C.

---

[2] Defendants also argue that Plaintiff's claim is barred by the applicable statute of limitations.  However, because the Court has determined that Defendants are entitled to qualified immunity, and because the statute of limitations issue cannot be decided on the face of Plaintiff's pleading, the Court will not analyze the issue.

§ 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

    IT IS SO ORDERED.

    Dated:   **December 4, 2007**         **/s/ Dennis L. Beck**
                                              UNITED STATES MAGISTRATE JUDGE